## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## BALTIMORE DIVISION

| | | |
|---|---|---|
| **UNDER ARMOUR, INC.** | ) | |
| 1020 Hull Street | ) | |
| Baltimore, Maryland 21230, | ) | CIVIL ACTION NO. |
| | ) | 14-CV-1497 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **JURY TRIAL** |
| | ) | **DEMANDED** |
| **I A NUTRITION, INC.** | ) | |
| 5607 Deauville Court | ) | |
| Cape Coral, Florida 33904, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Plaintiff, Under Armour, Inc. ("Under Armour"), alleges as follows, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters:

## NATURE OF THE ACTION

1.      This is a civil action for trademark infringement, trademark dilution, unfair competition, and cancellation of Defendant's trademark registration under the Lanham Act, 15 U.S.C. § 1051, *et seq.* and/or Maryland statutory and common law.  Under Armour seeks equitable and monetary relief from Defendant's willful violations of Under Armour's trademark rights in its famous UNDER ARMOUR mark and other ARMOUR-formative marks.

2.      Defendant has been offering for sale, selling, and promoting dietary supplements for athletes under the INNER ARMOUR name and mark in violation of Under Armour's trademark rights.  Historically, Defendant's operations were insignificant and isolated.  But in recent years, it has expanded its business, sales, and advertising/promotions in various ways that

conflict with Under Armour.  Among other things, Defendant has started using the INNER

ARMOUR mark prominently on apparel (i.e., t-shirts, sports bras, shorts, and pants) and has

featured in its advertising professional athletes (including, most recently, NFL draft picks) in

clothing emblazoned with the infringing INNER ARMOUR mark (and even paired with UNDER

ARMOUR clothing).  Inner Armour has also started mimicking elements of Under Armour

commercials in its online videos.  As a result of Defendant's use of INNER ARMOUR in

connection with its products, activities, and promotions, consumers are likely to believe

Defendant and/or its products are made, approved, or licensed by Under Armour.  Indeed, in two

separate unsolicited proposals, consumers wrote to Under Armour suggesting that it offer

beverages and supplements under the name INNER ARMOUR.

## PARTIES

3.      Plaintiff Under Armour is a Maryland corporation with a principal place of

business at 1020 Hull Street, Baltimore, Maryland 21230.

4.      Defendant I A Nutrition, Inc. is a Florida corporation with a principal place of

business at 5607 Deauville Court, Cape Coral, Florida 33904.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to 15

U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b).  Because Under Armour is a citizen of

the State of Maryland, Defendant is a citizen of the State of Florida, and the matter in

controversy exceeds $75,000 exclusive of interest and costs, the Court also has jurisdiction under

28 U.S.C. § 1332.  The Court has supplemental jurisdiction over Under Armour's state-law

claims pursuant to 28 U.S.C. § 1367(a) because they are substantially related to its federal claims

and arise out of the same case or controversy.

6.      This Court has general personal jurisdiction over Defendant based on its continuous and systematic contacts with Maryland, including its sale of products through distributors and/or stores in Maryland and shipment of products into Maryland.

7.      This Court has specific personal jurisdiction over Defendant because it has purposefully availed itself of the privilege of conducting business in Maryland.  Defendant (directly or through authorized agents) offers products bearing the marks that are the subject of this lawsuit through distributors and/or stores located in Maryland and uses those marks to promote and advertise its products in Maryland.  Under Armour's claims arise, in part, out of Defendant's contacts with Maryland.

8.      Venue lies in this District pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to Under Armour's claims have occurred and are continuing to occur in this District and Under Armour's trademarks at issue are located in this District, where Under Armour maintains its principal place of business.

## UNDER ARMOUR, ITS PRODUCTS, AND ITS FAMOUS TRADEMARKS

9.      Under Armour is one of the world's most successful, popular, and well-known providers of performance apparel, footwear, sporting goods, and accessories.  Through Under Armour's innovative use of advanced engineering and technology, it has revolutionized the performance-product industry.  In 2013 alone, Under Armour sold more than $2.33 billion worth of products.

10.     Since at least as early as 1996, Under Armour has continuously used and promoted the UNDER ARMOUR name/mark for apparel.

11.     Over the years, Under Armour has expanded to a wide range of other products and services, including but not limited to a full line of athletic clothing, footwear, and headwear;

accessories; bottled water; beverage bottles; safety gear; tactical gear; workwear; hunting gear; and sports equipment.  The distinctive UNDER ARMOUR name/mark has been used and promoted across Under Armour's extensive product line.

### Under Armour's Consumable Products

12.     As a natural extension of its business, Under Armour began offering bottled water in connection with its UNDER ARMOUR mark at least as early as March 2005.  Examples of Under Armour's bottled water (also bearing the WEAR ARMOUR mark) appear below.

  



13.     The beverage machine shown below, prominently featuring the UNDER ARMOUR mark, is an example of how UNDER ARMOUR bottled water has been sold.  As also shown below, UNDER ARMOUR water has been sold/distributed in glass coolers in retail stores, at trade shows, and other venues.



14.     Under Armour's bottled water has been offered and sold in stores across the country, including in Maryland.

15.     Under Armour also owns pending applications for the UNDER ARMOUR mark for "carbonated waters; drinking water; drinking water with vitamins; energy drinks; flavored bottled water; fruit beverages; fruit drinks; fruit juices; herbal juices; isotonic beverages; isotonic drinks; smoothies; sports drinks" and "vitamin fortified beverages; protein supplements in the form of beverages; nutritionally fortified beverages; dietary supplemental drinks; dietary supplemental drinks in the nature of vitamin and mineral beverages."  (U.S. App. Serial Nos. 85850816 and 85850855).  As stated in those applications, Under Armour has a bona fide intent to use the UNDER ARMOUR mark for these beverage products.

16.     Reflecting the public's recognition of Under Armour's innovative and expansive product line, Under Armour has regularly received and continues to receive unsolicited beverage-development proposals—some of which even suggest "ARMOUR" marks, such as the proposal for INNER ARMOUR beverages shown below.



17.     Another unsolicited proposal was posted on the Tumblr website on March 5, 2012, suggesting that Under Armour develop nutritional supplements under the mark "INNER ARMOUR":

paulgray831
*Follow*
Inner Armour ... brainstorming

First a little background as to how this idea came about.

In the past year and a half, maybe two years, I have really gotten into the world of personal fitness, strength training, and supplements. Now now, lets not make assumptions when I say *supplements*.  Supplementation is an awesome way to help achieve personal fitness goals, if done correctly and safely. Its even in the word! They **supplement** what you are **already doing**. That is what most people don't understand, and which is why they call it wasting money, because they buy a supplement, take it, sit around watching TV and complain why nothing happens! I digress, back on the idea at hand.

I got to the gym at least 4 times a week. I am in a bulking phase right now, so I am doing no cardio, and I've gained about 15lbs… mostly muscle ;)
Every time I go to the gym, I see all the athletes, and all the other gym rats who are there every week, always the same people. Anyone want to take a guess as to what brand of athletic apparel their wearing? Under Armour. Most of them anyway. Now, this is just a very small sample of gym goers in the US, but I bet if extensive market research was done the results would be somewhat similar. Under Armour products are just awesome to work out in, period. **Here is where my idea comes in.**

Introducing: **Inner Armour** …Under Armour's brand new supplement line. Made for athletes who want to get the most out of their bodies.

**Under Armour's Sales and Promotion of Its ARMOUR-Branded Products**

18.     Under Armour has sold billions of dollars worth of products under the UNDER

ARMOUR and other ARMOUR-formative marks (individually and collectively, the "ARMOUR

Marks").  Those products are promoted, offered, and sold nationwide through a wide variety of

retail means, including but not limited to thousands of retail stores, including national, regional,

independent, and specialty retailers such as *Academy Sports & Outdoors, Bass Pro Shops,*

*Cabela's, Foot Locker, Finish Line*, *The Sports Authority*, *Dick's Sporting Goods*, *Macy's,*

*Dunham's, Modell's, Hibbett Sports, Nordstrom*, and *The Army and Air Force Exchange*

*Service.*

19.     Under Armour's products are also offered and sold in connection with its

ARMOUR Marks through the websites and mail order catalogs of many of its retailers; Under

Armour's own retail and factory UNDER ARMOUR stores; and Under Armour's websites,

catalogs, and toll-free call center.

20.     Reflecting its significant growth and expansion over the years, Under Armour

owns federal trademark registrations and/or applications for its UNDER ARMOUR mark

covering a wide array of products and services, including products/services in Classes 3, 5, 8, 9,

10, 14, 16, 18, 21, 22, 24, 25, 26, 28, 32, 35, and 41.

21.     In addition to its UNDER ARMOUR name/mark, Under Armour has used and

promoted the ARMOUR mark alone and numerous other ARMOUR-formative marks in

connection with its wide range of products and services, including, for example, BABY

ARMOUR, GAMEDAY ARMOUR, OFFSHORE ARMOUR, ARMOURBLOCK, ARMOUR

STRETCH, ARMOURSTORM, ARMOUR GRABTACK, ARMOUR REACTACK,

ARMOURMESH, ARMOUR FLEECE, ARMOUR SELECT, ARMOURLOFT,

ARMOURGRID, ARMOURGRIP, ARMOURCHILL, ARMOURSIGHT, and

ARMOURSTEALTH, among others.  These ARMOUR-formative marks have been used and

promoted individually and/or together, and consumers have come to associate the ARMOUR

portion of the marks with UNDER ARMOUR.

22.     For years, Under Armour has spent tens of millions of dollars annually

advertising and promoting its ARMOUR Marks and products to the general public.  Under

Armour has widely and extensively promoted its ARMOUR Marks and products through

virtually every available type of media, including but not limited to print publications, signage,

television, and/or the Internet.

23.     With respect to print publications and signage, Under Armour has advertised and

promoted its ARMOUR Marks and products in a wide variety of nationally circulated magazines

and newspapers.  Further, the ARMOUR marks have been featured on billboards and other

signage in various cities, including but not limited to Baltimore, Philadelphia, and New York

City's Times Square.

24.     Under Armour has advertised and promoted its ARMOUR Marks and products

through television commercials, including television commercials during the Super Bowl,

product placement in popular movies, national television programs, and coverage of sporting

events featuring its branded products, among other means.

25.     Under Armour also promotes and showcases its ARMOUR Marks and products

on its websites.  And Under Armour's ARMOUR Marks and products are advertised and/or sold

through many of its retailers' websites, including but not limited to the websites used by *Bass

Pro Shops, Bloomingdales.com, Cabela's, City Sports, Dick's Sporting Goods, Eastbay, Eastern*

*Mountain Sports, Finish Line, Foot Locker, Gilt Groupe, Hibbett, LL Bean, Lord & Taylor,*

*Macy's.com, MC Sports, Modell's, Nordstrom, Sportsman's Guide,* and *Sportsman's Warehouse.*

26.     Sponsorships, outfitting agreements, and individual athlete agreements represent

another significant form of advertising and promotion by Under Armour.  Under Armour's

ARMOUR Marks are promoted through high-profile athletes and teams at the youth, collegiate,

professional, and Olympic levels.

27.     Since 2006, Under Armour has been an authorized supplier of footwear to the

NFL and is currently also the official performance footwear supplier to the MLB and authorized

supplier of gloves to the NFL.

28.     In addition to its own substantial advertising and promotional activities, Under

Armour and its ARMOUR Marks and products have received and continue to receive

widespread unsolicited media coverage.  Indeed, many of the athletes, teams, and sporting events

sponsored by Under Armour appear on nationally broadcast television programs and in widely

circulated publications, exposing tens of millions of consumers to the ARMOUR Marks.

29.     Under Armour has received numerous awards for its commercial success in

connection with the development of its innovative and technologically enhanced products.

30.     As a result of its distinctive nature, and thus inherent strength; widespread

advertising, publicity, promotion, and sales; and longstanding and extensive use and recognition,

the UNDER ARMOUR mark has been well known and famous for years.

31.     In *Under Armour, Inc. v. Bode*, Opp. No. 91178653 (TTAB May 21, 2009), the

Trademark Trial and Appeal Board of the United States Patent and Trademark Office (PTO)

expressly acknowledged the fame of the UNDER ARMOUR mark.

32.     Under Armour owns, among others, the following valid and subsisting U.S.

federal trademark registrations for its UNDER ARMOUR marks (printouts from the PTO

database are attached as Exhibit A):

| Mark | Reg. No. | Reg. Date | Products/Services |
|---|---|---|---|
| UNDER ARMOUR | 2279668 | 09/21/99 | Clothing, namely, t-shirts, long sleeve shirts, mock turtle necks, hats, shorts, shirts, leggings, jersey's, pants, headwear for winter and summer, under wear, tank tops (male and female), winter caps, sweat shirts/pull overs, womens bra in Class 25 |
| UNDER ARMOUR | 4380298 | 08/06/13 | Light duty utility gloves; Reusable plastic water bottles sold empty; Reusable stainless steel water bottles sold empty; Sports bottles sold empty; Squeeze bottle sold empty; Vacuum bottles; Water bottles sold empty; Work gloves in Class 21 |
| UNDER ARMOUR | 2917039 | 01/11/05 | Wristbands, headbands, rain suits, jackets, socks, skirts, athletic sleeves, hoods, skull wraps, skull caps, vests, hats, shorts, shirts, leggings, pants, headwear for winter and summer, underwear, tank tops, bras, girdles in Class 25 |
| UNDER ARMOUR | 3052160 | 01/31/06 | Gloves in Class 25; Chin straps for use with protective helmets in Class 9; toiletry kits, sold empty in Class 18; sports bottles, sold empty in Class 21; lanyards for holding mouthpieces, water bottles, eyeglasses, badges, or keys in Class 22; sports towels in Class 24 |
| UNDER ARMOUR | 3638277 | 06/16/09 | Online retail store services featuring apparel, footwear, sporting goods, eyewear, headwear, wrist bands, sweat bands, belts, gloves, hand-warmers, plastic water bottles sold empty, watches, |

| Mark | Reg. No. | Reg. Date | Products/Services |
|------|----------|-----------|-------------------|
|  |  |  | sports bags, tote bags, travel bags, backpacks, golf bags, messenger bags, duffel bags, shoe bags for travel, toiletry bags sold empty, wheeled bags, waist packs, sling bags, umbrellas, towels, posters; mobile retail store services featuring apparel, footwear, and sporting goods in Class 35 |
| UNDER ARMOUR | 3642614 | 06/23/09 | Full line of athletic clothing in Class 25 |
| UNDER ARMOUR | 3712052 | 11/17/09 | Ankle socks, athletic uniforms, baseball caps, baseball shoes, baseball uniforms, baselayer bottoms, baselayer tops, beach footwear, boxer briefs, boxer shorts, briefs, capri pants, children's headwear, coats, dresses, fleece pullovers, football shoes, footwear, foul weather gear, golf caps, golf shirts, golf trousers, hooded pullovers, hunting vests, jogging pants, knit shirts, men's socks, mittens, moisture-wicking sports bras, moisture-wicking sports pants, moisture-wicking sports shirts, polo shirts, rain jackets, rain trousers, rainproof jackets, rainwear, running shoes, short-sleeved or long-sleeved t-shirts, short-sleeved shirts, ski bibs, ski gloves, ski jackets, ski pants, ski wear, skorts, sleeveless jerseys, snow pants, snowboard gloves, snowboard mittens, snowboard pants, soccer boots, sport shirts, sports bras, sports jerseys, sports pants, sports shirts, sweat bands, sweat pants, tennis wear, thongs, thongs, training shoes, undershirts, unitards, visors, waterproof jackets and pants, wind pants, wind resistant jackets, wind shirts, in Class 25 |
| UNDER ARMOUR | 3901624 | 01/04/11 | Briefcases specially adapted for holding laptop computers, backpacks specially adapted for holding laptop computers, armbands specially adapted for holding mp3 players and cellular phones, in Class 9 |
| UNDER ARMOUR | 3944953 | 04/12/11 | Stickers in Class 16 |

| Mark | Reg. No. | Reg. Date | Products/Services |
|---|---|---|---|
| UNDER ARMOUR | 3712050 | 11/17/09 | All purpose sport bags, all-purpose athletic bags, athletic bags, bags for sports, daypacks, golf umbrellas, hiking bags, shoe bags for travel, umbrellas in Class 18 |
| UNDER ARMOUR | 3722377 | 12/08/09 | Football towels, golf towels, towels, in Class 24 |
| UNDER ARMOUR | 3929387 | 03/08/11 | Baseball bat bags, field hockey gloves, field hockey stick bags, lacrosse stick bags, running gloves, softball bat bags in Class 28 |
| UNDER ARMOUR | 3586005 | 3/10/09 | Entertainment services, namely, organizing and conducting an array of athletic events rendered live and recorded for the purpose of distribution through broadcast media, in Class 41 |
|  | 3081173 | 04/18/06 | Chin strap pads for use with protective helmets, in Class 9; toiletry kits, sold empty, in Class 18; sports bottles, sold empty, in Class 21; sports towels, in Class 24; gloves in Class 25 |
|  | 3138451 | 09/05/06 | Clothing, namely, gloves and shirts in Class 25 |
|  | 3663142 | 08/04/09 | Full line of athletic clothing, headwear, footwear, gloves in Class 25 |
|  | 2509632 | 11/20/01 | Clothing, namely, shirts, hats, pants, t-shirts, underwear, brassiere and shorts in Class 25 |
|  | 2954369 | 05/24/05 | Wristbands, headbands, rain suits, jackets, socks, skirts, athletic sleeves, hoods, skull wraps, skull caps, vests, hats, shorts, shirts, leggings, pants, headwear for winter and summer, underwear, tank tops, bras, girdles in Class 25 |

| Mark | Reg. No. | Reg. Date | Products/Services |
|---|---|---|---|
| UNDER ARMOUR | 2991124 | 09/06/05 | Sport bags, travel bags, duffel bags, backpacks, sack pacs, and reservoir backpacks in Class 18 |

33.     Under Armour also owns the following valid and subsisting Maryland trademark registrations for its famous UNDER ARMOUR and ARMOUR marks, among others:

| Mark | Reg./ App. No. | Reg./Filing Date | Products/Services |
|---|---|---|---|
| UNDER ARMOUR | 2009-0056 | 05/1/2009 | Water bottles |
| UNDER ARMOUR | 2009-0055 | 05/01/09 | Footwear, athletic footwear, clothing, namely, shirts, shorts, pants, headwear, hats, baseball hats, caps, t-shirts, long sleeve shirts, short sleeve shirts, polo shirts, sweatpants, sweatshirts, hooded sweatshirts, jerseys, turtle necks, mock turtle necks, pullovers, underwear, brassieres, headbands, wristbands, socks, athletic socks, dress socks, skirts, skorts, athletic sleeves, hoods, skull wraps, skull caps, vests, leggings, tank tops, bras, sports bras, girdles, gloves, belts, hand-warmers, jackets, coats, unitards, baby clothing, bib overalls, snow pants, moisture-wicking shirts, compression shirts, compression pants, compression shorts, long underwear; full line of athletic clothing; clothing for athletic use, namely, padded shirts, padded pants, padded shorts, padded elbow compression sleeves in Class 39 |

| UNDER ARMOUR | 2009-0057 | 05/01/09 | Chin straps for use with protective helmets, sports gloves, golf gloves, batting gloves, football gloves, lacrosse gloves, mouth guards for athletic use, athletic equipment, namely, guards for the lips, chin pads for athletic use, knee pads for athletic use, elbow pads for athletic use, forearm pads for athletic use, shin guards for athletic use, football girdles, protective athletic cups, jock straps, sports bottles, sold empty in Class 22 |
|---|---|---|---|
| UNDER ARMOUR | 2009-0059 | 05/01/09 | Bags, sport bags, travel bags, duffel bags, backpacks, sack pacs, reservoir backpacks, toiletry kits, sold empty, golf bags, bags specially adapted for sports equipment in Class 3 |
| UNDER ARMOUR | 2009-0058 | 05/01/09 | Retail, online retail, and mobile retail store services featuring apparel, footwear, sporting goods, and accessories in Class 53 |
| UNDER ARMOUR | 2009-0056 | 05/01/09 | Sunglasses, lenses for sunglasses, visors for use with helmets, watches, lanyards for holding mouthpieces, water bottles, eyeglasses, badges, or keys, magnetic coded gift cards, electronic gift cards, sports towels in Class 50 |

**Defendant and Its Wrongful Activities**

34.     Without Under Armour's authorization and approval, Defendant has been

offering, selling, and promoting dietary supplements for athletes under the INNER ARMOUR

name and mark:





16

35.      Over time, Inner Armour has expanded its product offerings to include clothing, i.e., t-shirts, sports bras, pants, and shorts.  Making matters worse, Inner Armour has featured in its advertising professional athletes wearing both INNER ARMOUR and UNDER ARMOUR-branded clothing:









Free T Shirt w/ $50
Purchase

36.     Over time, Inner Armour also began using professional athletes to promote its

products, including 2012 NFL draft picks (often wearing INNER ARMOUR-branded clothing):



*2012 Inner Armour — Inner-P3™ Athletes and 2012 NFL Draft Picks: Antwon Blake by Jacksonville Jaguars, Brandon Bolden by New England Patriots, Tahir Whitehead by Detroit Lions, and Nick Sukay by Buffalo Bills.*



37.     Moreover, Inner Armour released online promotional videos mimicking similar

videos previously released by Under Armour.  Screenshots from the videos are shown below:

**Under Armour Video**



**Inner Armour Video**



38.     Defendant obtained Registration No. 3323890 for the mark INNER ARMOUR with the PTO for "dietary and nutritional supplements" in International Class 5, and Under Armour moved to cancel that registration before the Trademark Trial and Appeal Board.  (*See Under Armour, Inc. v. I A Nutrition, Inc.*, Cancellation No. 92056380).

39.     Defendant's infringing products are available through some of the same retail channels as Under Armour's ARMOUR-branded products, including AMAZON.com.

40.     Under Armour has repeatedly asked Defendant to stop its infringing conduct, but Defendant refused.

41.     Fully aware of Under Armour's rights, Defendant has acted knowingly, willfully, in reckless disregard of those rights, and in bad faith.

**INJURY TO UNDER ARMOUR AND THE PUBLIC**

42.     Defendant's unauthorized use and/or registration of the INNER ARMOUR mark are likely to cause confusion, mistake, and deception as to the source or origin of Defendant's products, and are likely to falsely suggest a sponsorship, connection, or association between Defendant, its products, and/or its commercial activities with Under Armour.

43.     Defendant's unauthorized use and/or registration of the INNER ARMOUR mark have diluted and are likely to continue to dilute the distinctiveness and value of Under Armour's famous UNDER ARMOUR mark.

44.     Defendant's acts, described above, have damaged and irreparably injured and, if permitted to continue, will further damage and irreparably injure Under Armour and its ARMOUR Marks.

45.     Defendant's acts, described above, have irreparably injured, and, if permitted to persist, will continue to irreparably injure the public, who has an interest in being free from confusion, mistake, and deception.

**FIRST CLAIM FOR RELIEF**
**Trademark Infringement Under**
**Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)**

46.     Under Armour repeats and realleges each and every allegation set forth in Paragraphs 1 through 45 of this Complaint.

47.     Without Under Armour's consent, Defendant used and continues to use in commerce reproductions, copies, and colorable imitations of Under Armour's registered ARMOUR Marks in connection with the offering, distribution, and advertising of goods, which is likely to cause confusion, or to cause mistake, or to deceive, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

## SECOND CLAIM FOR RELIEF
### Trademark Infringement, False Designation
### of Origin, Passing Off, and Unfair Competition
### Under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)

48.     Under Armour repeats and realleges each and every allegation set forth in

Paragraphs 1 through 47 of this Complaint.

49.     Defendant's actions, as described above, are likely to cause confusion, or to cause

mistake, or to deceive as to the origin, sponsorship, or approval of Defendant, its products,

and/or its commercial activities by or with Under Armour, and thus constitute trademark

infringement, false designation of origin, passing off, and unfair competition in violation of

Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

## THIRD CLAIM FOR RELIEF
### Trademark Dilution Under Section
### 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)

50.     Under Armour repeats and realleges each and every allegation set forth in

Paragraphs 1 through 49 of this Complaint.

51.     Under Armour's UNDER ARMOUR mark is famous, as that term is used in 15

U.S.C. § 1125(c), and was famous before Defendant's first use of the INNER ARMOUR mark,

based on, among other things, the inherent distinctiveness and federal registration of Under

Armour's UNDER ARMOUR mark and the extensive nationwide use, advertising, promotion,

and recognition of that mark.

52.     Defendant's actions, as described above, are likely to dilute the distinctive quality

of Under Armour's famous UNDER ARMOUR mark by blurring in violation of Section 43(c) of

the Lanham Act, 15 U.S.C. §1125(c), as amended by the Trademark Dilution Revision Act of

2006.

## FOURTH CLAIM FOR RELIEF
### Trademark Infringement Under
### Md. Code Bus. Reg. § 1-414 *et seq.*

53.     Under Armour repeats and realleges each and every allegation set forth in

Paragraphs 1 through 52 of this Complaint.

54.     Defendant's use, without the consent of Under Armour, of a reproduction and/or

colorable imitation of Under Armour's registered ARMOUR Marks in connection with the sale,

offering for sale, and/or advertising of goods or services, is likely to cause confusion, or to

deceive as to the origin of the goods or services, and thus constitutes trademark infringement in

violation of Md. Code Bus. Reg. § 1-414 *et seq.*

55.     Defendant's reproduction and/or colorable imitation of Under Armour's

registered ARMOUR Marks and application of that reproduction and/or colorable imitation to

Defendant's advertising, labels, prints, receptacles, signs, or wrappers that are intended to be

used with goods or services and/or in conjunction with the sale or other distribution of goods or

services in Maryland constitutes trademark infringement in violation of Md. Code Bus. Reg. § 1-

414 *et seq.*

## FIFTH CLAIM FOR RELIEF
### Trademark Infringement, False Advertising, and Unfair Competition
### Under Maryland Common Law

56.     Under Armour repeats and realleges each and every allegation set forth in

Paragraphs 1 through 55 of this Complaint.

57.     Defendant's actions, as described above, are likely to cause confusion, or to cause

mistake, or to deceive as to the affiliation, connection, or association of Defendant with Under

Armour, or as to the origin, sponsorship, or approval of Defendant, its products, and its

commercial activities by or with Under Armour such that Defendant's acts constitute

infringement of Under Armour's proprietary rights in its ARMOUR Marks, misappropriation of

Under Armour's goodwill in those marks, and unfair competition under Maryland common law.

58.     Defendant's actions, as described above, constitute false and misleading

descriptions and misrepresentations of fact in commerce which, in commercial advertising and

promotion materially misrepresent the nature, characteristics, and qualities of Defendant's

products and constitute false and deceptive advertising under Maryland common law.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Under Armour respectfully demands a trial by jury on all

issues properly triable by a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Under Armour respectfully requests that this Court enter judgment in its

favor on each and every claim for relief set forth above and award it relief, including but not

limited to the following:

A.      An Order declaring that Defendant's use and/or registration of the INNER

ARMOUR mark infringe Under Armour's ARMOUR Marks, dilute Under Armour's UNDER

ARMOUR mark, and constitute unfair competition under federal and/or state law, as detailed

above;

B.      A permanent injunction enjoining Defendant and its employees, agents, partners,

officers, directors, owners, shareholders, principals, subsidiaries, related companies, affiliates,

distributors, dealers, and all persons in active concert or participation with any of them:

1.      From using, registering, or seeking to register Defendant's INNER

ARMOUR mark in any form, including but not limited to in connection with any other

wording or designs, and from using any other marks, logos, designs, designations, or

indicators that are confusingly similar to any of Under Armour's ARMOUR Marks

and/or dilutive of Under Armour's UNDER ARMOUR mark;

2.     From representing by any means whatsoever, directly or indirectly, that

Defendant, any products or services offered by Defendant, or any activities undertaken by

Defendant, are associated or connected in any way with Under Armour or sponsored by

or affiliated with Under Armour in any way;

3.     From assisting, aiding or abetting any other person or business entity in

engaging in or performing any of the activities referred to in subparagraphs B(1)-(2);

C.     An Order directing Defendant to destroy all products, packaging, signage,

advertisements, promotional materials, stationery, forms, and/or any other materials and things

that contain or bear Defendant's INNER ARMOUR mark or any other marks, logos, designs,

designations, or indicators that are confusingly similar to or dilutive of any of Under Armour's

ARMOUR Marks and/or dilutive of Under Armour's UNDER ARMOUR mark;

D.     An Order directing the Director of the PTO to cancel Trademark Registration No.

3323890 for the mark INNER ARMOUR with prejudice;

E.     An Order directing that, within thirty (30) days after the entry of the injunction,

Defendant file with this Court and serve on Under Armour's attorneys a report in writing and

under oath setting forth in detail the manner and form in which Defendant has complied with the

injunction;

F.     An Order requiring Defendant to account for and pay to Under Armour any and

all profits arising from the foregoing acts, and increasing such profits, in accordance with 15

U.S.C. § 1117 and other applicable laws, including but not limited to Md. Code Bus. Reg.

§ 1-414 *et seq.*;

G.      An Order requiring Defendant to pay Under Armour damages in an amount as yet undetermined caused by the foregoing acts, and trebling such damages in accordance with 15 U.S.C. § 1117 and other applicable laws, including but not limited to Md. Code Bus. Reg. § 1-414 *et seq.*;

H.      An Order requiring Defendant to pay Under Armour all of its litigation expenses, including reasonable attorneys' fees and the costs of this action pursuant to 15 U.S.C. § 1117 and other applicable laws;

I.      An Order requiring Defendant to pay Under Armour punitive damages for trademark infringement and unfair competition under Maryland common law; and

J.      Other relief as the Court may deem appropriate.

Dated:  May 6, 2014                     Respectfully submitted,

*/s/  Douglass A. Rettew*
Douglas A. Rettew (29815)
Danny M. Awdeh
Anna B. Naydonov
FINNEGAN, HENDERSON,
  FARABOW, GARRETT &
  DUNNER, LLP
901 New York Avenue, N.W.
Washington, D.C.  20001-4413
(202) 408-4000 (phone)
(202) 408-4400 (fax)
Email: doug.rettew@finnegan.com
Email: danny.awdeh@finnegan.com
Email: anna.naydonov@finnegan.com

Attorneys for Plaintiff
Under Armour, Inc.